Now, all right. Please proceed. Thank you, Your Honor. I'm here today because the jury at Mr. Williams' double homicide trial never had an opportunity to hear his duress defense. One of the questions, of course, is would it have made a difference had the jury heard that defense? What do you mean by they didn't have the opportunity? You mean because the defendant chose not to testify? The defendant didn't testify, Your Honor, and I want to fall away from the word chose because his counsel advised him not to testify based upon the trial court's ruling that the rest would not be a defense to felony murder, which was wrong. Most of these cases were based upon some kind of a pre-trial or in limine ruling the defendant decides not to testify. The Supreme Court has said, well, that's too bad because in order for you to take, not take advantage, but to have standing to raise that error, you must have testified. And I'm thinking, for instance, in cases where the court says, yes, if you testify, I'm going to let the prosecutor impeach you with proof of your prior felony conviction for murder. And so the defendant doesn't testify. And it turns out, you know, that was error and couldn't have been impeached with that. But still, you have to exercise your right to take the stand in order to challenge the error. Right? That's a pretty fundamental concept, Your Honor, and that's one of the reasons why I am relying heavily on a theory of ineffective assistance of counsel to present this issue, because in this particular case, I think it's interesting to note, and I know that the Court has expressed the doubt that I think is always there of what would Mr. Williams have said if he did take the stand. And to get a feel for that, you can look at what he said to the police shortly after he was arrested. And it's in the record. It's in the excerpt of record at pages, there's a transcript of it at pages 39 to 52, where shortly after he was arrested, he admitted the extent of his And this was without having talked to counsel. It isn't like he had an opportunity to shape his statement to the police based upon things that maybe a lawyer had told him. He kept talking repeatedly about his fear of Simon and the fact that he had seen Simon shoot one person and Simon had a gun in his hand and was going to, and I think it's really, if the Court has not recently looked at that statement that Mr. Williams made to the police, that it's worth going back and looking at that at pages 39 to 52 because that gives a very good idea of what Mr. Williams would have said had he testified. Now, as I indicated, I today want to rely on the theory of ineffective assistance of counsel, and the Court's initial question has reaffirmed my belief that that's probably the way to go today. You would have to have some clairvoyance to know that the court of appeal was going to rule in his favor based on a footnote in the Peterson case, right, I mean Anderson case, because there was no other authority out there to say that that duress could be even raised. Correct. The clearest authority for this was decided, came down in the second session after this decision was made by trial counsel. So, yes, it was not a crystal clear decision for trial counsel, which is why before counsel gave his client that advice, and it was so clear that trial counsel knew duress was the only theory of defense here because, and it's really kind of a partial defense. As this case goes, it's probably not going to be a full defense, but it would make a huge difference to Mr. Williams. Given the uncertain state of the law, as Judge Siler just indicated, how can you say that was ineffective, you know, for trial counsel to give the advice he did? Because on such a crucial point, counsel should have sought writ relief from the court of appeal before just giving his client the advice to stay off the witness stand and place the case in the posture that the court has suggested that by not testifying, he very well might have waived the issue on appeal. I think that's when it's clear that counsel knew this was a very important issue. He raised it in a pretrial hearing. He continued to litigate this issue throughout the trial right up to the day of sentencing. He actually was still litigating it on the day of sentencing. He knew it was that important. And so to not take every step to ensure that he was giving his client the correct advice, and obviously counsel understood that there was some law on his side and that he did have a chance of winning this issue. And the best way to preserve the issue would be to either have Mr. Williams testify or, and of course he advised him not to, or to seek writ relief so that he could correct the trial court's erroneous opinion or statement that it made about the inapplicability of a duress defense to felony murder. There are a number of very troubling aspects, I think, of the court of appeal opinion. In ruling on the claim of ineffective assistance of counsel, I am very concerned about the inconsistencies between what the court says in dealing with ineffective assistance, saying, well, there was no problem because the issue was preserved for appeal, but then when dealing with that same issue on appeal, the court says, really in three different ways, at pages 9, 10, and 11 of the court of appeal opinion, in separate statements, in separate ways, is saying the issue was not preserved for appeal. At page 9, the court says there was no error at trial because no evidence of duress was presented. And then at the bottom of page 10, top of page 11, basically saying that Mr. Williams really either should have testified or should have sought writ relief. And then at page 11, the court purports to deal with the issue as error, but it really doesn't, because the court gives four reasons why it says it's too speculative and could not be prejudicial for that reason under any theory. And the second of those four reasons is that would the trial court have continued to refuse to instruct on duress as a defense to felony murder had the evidence actually been presented, which really is just another way of saying waiver when you stop and think about it. So every time the court of appeal deals with this issue in the context of the appeal, it's saying that the issue was not preserved for appeal, and yet in dealing with the habeas corpus issue, it says just the opposite. Kennedy. Counsel, I'm a little bit bothered by the case of Luce v. United States. I don't know if you're familiar with that. But hasn't the Supreme Court held that when a defendant elects not to testify in the face of what he believes to be an erroneous and limiting ruling on the admissibility of a prior conviction, let's say, to impeach him, he's prohibited from challenging that ruling on appeal because we don't know what his evidence would be? Which is why I'm asserting this on habeas corpus as the Isn't that, if this is an AEDPA case, can you point out a clearly established Supreme Court ruling saying that without testifying, the issue is preserved? Your Honor, that's why I'm going ineffective assistance of counsel here, because I think this does fall under the rubric of ineffective assistance of counsel. I think the actions of counsel, A, by the way he advised his client to not testify And it was ineffective assistance of counsel because he didn't take note of that footnote in the Anderson case? What was the ineffective assistance of counsel? Not getting a writ? It was Which one was it? Or both? It's a combination of the advice he gave his client without I mean, obviously, counsel realized that there was an issue here. He litigated this throughout. He understood that there were exceptions to the general rule that it's not a defense to murder. And that it looked like this was one of those exceptions. And so he started litigating it more than a month before trial and continued to litigate and continued to litigate. He knew it was an issue. He thought that duress would be a defense to felony murder. And he told his client, that's what I think, but I can't be 100 percent sure. But we've got to do one of two things. Either put you on the stand to testify and risk a conviction and then appeal that if the duress instruction is not given. Or seek a writ. All right. Now, what was his deficient performance? I'm trying to get my mind around your case. The deficient performance is, remember, this was being tried as a capital death case. And so counsel was being very key. He was actually talking about the court's pretrial ruling in terms of this would be suicide. The court made a ruling. What was the act or omission that constituted deficient performance? The act was saying, I'm advising you not to testify based upon the trial court's pretrial ruling that the court will not under any circumstance instruct on duress as a defense to felony murder and giving that advice knowing that there's a footnote in the case law that says the contrary. So he should have said, but we can put you on the stand and you have to testify. And does this man have a prior conviction? Yes. He doesn't have a bad record, but it's nothing like this. But he would have been a felon on the stand, right? That's my understanding. Okay. But he would have admitted a lot of the details of the crime, right, if he had been on the stand. He had discussed the case in detail with the police, yes. He had discussed line by line from the park to the site of the second homicide. Counsel has said, we can put you on the stand, but all we've got is a footnote in the Anderson case. And it's up to you. Do you want to take a stand or do you not want to take a stand? Would that have been deficient performance? That would probably ‑‑ I think that's different than what we have. So you're flat out charged as deficient performance. He should have said, we're going to put you on the stand anyway, even though you don't get a duress. You're going to testify, and if you get convicted, we keep this error on appeal. Or he should have sought interim relief by writ. Yes. It's my understanding that counsel told his client not to testify. That's my advice. Don't testify. And that it wasn't as sophisticated as the suggestion that the Court's making. Are you saying that was deficient performance? To say don't testify. Not to testify. That was deficient. That's part of the deficiency. There's two parts to the deficiency. One is saying don't testify, but without following up on what counsel knew to be a ‑‑ the likelihood that he could get relief out of the court of appeal, which would have been available then but wasn't available later on appeal. Likelihood, I mean, you can make that statement only by hindsight. Looking at it then, you couldn't say there was a likelihood you would get relief. Maybe there was some possibility, but I don't think you can say likelihood. Still, I think it would have been setting the case up for appeal much better than it did. It's different, you know, one, saying, well, the better course, the more prudent course would have been to tell the client, well, you know, there's some possibility we can get relief by a writ, but I'm, you know, advising you not to testify. There's some difference between saying, you know, that's a better course than to saying it's ineffective assistance or it's malpractice not to do that. I mean, it's a questionable, debatable issue, isn't it? I would say no, Your Honor. All right. If the Court has no further questions. No, I do. I come back to this. Under AEDPA, can you cite me a Supreme Court case decision which says that this is a violation of the defendant's rights?  All right. Thank you very much. May it please the Court, Daniel Rogers for appellee. To begin with, as Judge Bake pointed out, this is a case arising under the AEDPA. And again, as is pointed out in the appellee's brief, there is no controlling United States Supreme Court authority to support the appellant's position. Except the general authority that ineffective assistance of counsel is a violation of the Sixth Amendment. That general authority is cited by appellant. However, coming back to the AEDPA and the frame of reference that 2254d.1 provides, the State court's application of Strickland, of the general authority that ineffective assistance of counsel violates the Sixth Amendment, would have to be contrary to or an unreasonable application. And appellant simply cannot meet that burden in this case. As Judge Tashberg pointed out or Tashima, forgive me, pointed out, this really came down to a strategic decision in the sense that the State court's application there is this, and I hesitate to call it a ruling, there is this inlimiting indication by the trial court of how he would rule once the obligation under Matthews, once substantial evidence to support a duress instruction was presented, once that That is the indication that the Court gave. However, again, at supplemental excerpts of record, page 26, the Court states, I don't know your scenarios and I don't know your evidence, so I can't really make a fully informed and advanced judgment on that. But you've got the cases. I will follow them. They gave instructions in Bassigalupo, and if they're appropriate here, I would consider them. I don't know that they had to under the existing case law. I think that judge probably went further than he or she had to do. But I'm certainly open to discussion on that, and those instructions are in there. Now, there is also we certainly can't ignore his earlier statements that the trial court believed duress was not a defense even on a felony murder theory. But I think it is at least arguable, based on that language, the Court certainly made no impediment to the defendant presenting the evidence. Kennedy, did the defendant present an instruction? The defendant did not present an instruction. To my recollection, I've been to the trial court. Well, there was nothing to support the instruction. Yeah. At that point, there'd be nothing to support it, right? Correct. My recollection of events was that the duress defense was presented at the in limine rule, or the request for an instruction was presented at the in limine ruling, and then again later in the new trial motion. But there was no evidence presented. And in fact, I think it is a misstatement to say that the only defense here was a defense of duress. The defendant proceeded on a viable alternative defense theory, namely, putting the prosecution to its proof, claiming that there was not proof beyond a reasonable doubt to put the defendant at the scene to demonstrate his involvement in the offenses. And in fact, we have the jury come back with a second-degree murder conviction as to the first count, the murder of Mr. Annis. So, you know, that defense certainly had some viability. There, the fluid evidence, the DNA evidence, as to whether or not there was any evidence to the second victim, certainly did not link him directly to the rape. He was tried on an aiding and abetting theory on that crime. But there were no eyewitnesses. I mean, this was certainly not an easy case for the prosecution. Could defense counsel have taken this right up in the middle of the trial? Why isn't that ineffective assistance of counsel? Well, Your Honor, I think the State court, and I think the State court is probably the best the State court that would have heard the writ petition is probably the best authority on whether, as a matter of State law, this issue could have been writted. That writ procedure was available, but it still puts trial counsel in the position. Even assuming that the State court says the trial court's initial indication is erroneous, duress as a matter of California law is a defense to felony murder, trial counsel is still in the position then of putting his client on the stand. As the district court, the magistrate judge noted in the report and recommendation at ER 121, felony murder was not the only theory of murder presented to the jury. There was also a first-degree premeditated theory presented as to both victims. The defendant would have had to get up on the stand and admit his presence, his involvement. Again, now all the ambiguities in the physical evidence as to his presence at the scene and degree of involvement go away. He's essentially admitted that he was there and that he was involved. Scalia, you did that by his statement, though, did you not? His statement to his girlfriend that was surreptitiously recorded in the jail does give an indication of his involvement. It is much more vague than the statements made to the police officers, which were not introduced at trial. Okay. However, What are you getting at? Are you saying that it would have been quite risky for him to pursue this duress defense? Absolutely. I'm saying, Your Honor, I'm saying that even had the trial court's preliminary indication been correct, there was still a tactical decision to be made. And to say that the only decision that a reasonably competent attorney could make in that circumstance is to put the defendant on and present that duress evidence, I simply don't believe is borne out by the record. And certainly there is no case law that I'm aware of that supports that position. Well, let me ask you this question. Is there any indication in this record that the trial counsel at that time considered these, you know, strategic, tactical questions about whether or not to pursue it? The only indication I'm aware of in the record, and it's cited in the district court's, the report and recommendation, is a citation that when the defendant indicated that he would not take the stand, trial counsel stated and the defendant affirmed that his reason was the state of the evidence and the duress issue, that that was his reason for not taking the stand. We have the declarations of Appellant and of his trial counsel in the excerpts of record. And again, I think that, as the State court noted, one of the reasons that the second prong of Strickland here is such a tough hurdle for Appellant to meet is that we don't know what would have happened had the evidence been presented. Appellant's own statements to the police that he claims give a good indication of what he would have said. There are problems with those. Presumably, now, the statements to the police, again, my recollection of the proceedings was that there was a challenge based on an alleged Miranda violation, and the prosecution elected not to present his statements at trial. But even assuming a Miranda violation, I believe that had the defendant testified, those statements still would have been available to impeach him. At page 40 of the excerpts, Appellant states, in reference to Simon, he shoot a dude over there, take the girl, and get in the passenger seat. Now, again, I think just as a matter of logic, if and you'll see that in Simon's later, Appellant's later offer of proof, he indicates that he didn't know that Annis had been killed, that he saw Simon shoot into the car, but he didn't know that there was someone in it. I think his statement to the police at excerpt 40 contradicts that statement. And now, again, logically, he sees Simon shoot Mr. Annis. Ms. Magpoli sees Simon shoot Mr. Annis. Now he's going to aid and abet Mr. Simon in raping Ms. Magpoli. But I think it defies credulity to believe that at that point he could harbor any illusion that she would survive that encounter, that she wouldn't be killed to eliminate a witness to both the rape and the murder. His duress defense, again, would not be applicable in that first-degree premeditated situation. I think on this evidence, even though a felony murder theory was presented as to Ms. Magpoli, on this evidence, and particularly in light of the second-degree implied malice murder verdict as to Annis, I think this is premeditated first-degree murder. This isn't felony murder. And again, I think that goes back to why, under Matthews, this Court's decision, I believe it's Bradley, that you need to have substantial evidence to support the instruction, the defense instruction, because it gives a reviewing court something to look at, and otherwise, this Court would be forced to play what-ifs. And the California State Court, in determining that it was not unreasonable, or it was not ineffective assistance of counsel to make this decision, was not unreasonable, and did not apply Strickland incorrect, unreasonably, unless there are further questions from the panel. Your theory about Strickland, second prong, is that even if a duress instruction had been given, we don't know how he would have fared on the witness stand, and he wouldn't have known how he fared because his testimony that he was there at all moments might have been used by the jury to find him guilty of premeditated murder as an aider and abetter. Indeed. And not simply under felony murder. Indeed, Your Honor. And I think the magistrate. I just wanted to get that straight. Yes. And I think the magistrate judge at Excerpts 121 makes the point far more eloquently than I do that that evidence certainly could have been far more harmful than helpful to the defendant. And he has a burden of proving the second prong of Strickland. You say the court below did not commit an abuse of discretion in finding the way that it did. Correct. And again, unless the panel has further questions, Appellee would be prepared to submit the matter. Just briefly, Your Honors. Counsel argues that, in his opinion, it was the second murder was a premeditated murder. I strongly disagree, and I believe that had the jury thought that Mr. Williams was acting with premeditation on that second murder, they would have returned the death penalty. I think the returning the life without parole was, to some extent, an act of mercy that was based on their understanding that he was a subordinate throughout this entire event. The court asked, was there any indication in the record about as to whether or not counsel had a tactical reason for doing what he did? And I would say that the record contains just the opposite. In counsel's declaration, and I'm looking at page 27 in the excerpts of record, counsel addresses the question of why he didn't seek writ relief concerning the trial court's ruling. And remember that trial counsel initially started to litigate this about 45 days before trial. So he had time, if he wanted to, to take this to the court of appeal. But he said that he talked to his co-counsel and they discussed the possibility of filing a writ. We did not initiate a writ proceeding because case law indicates the court of appeal will not grant writ relief concerning pretrial evidentiary rulings. Well, the court of appeal opinion disagrees with him on that point. The court of appeal opinion actually says he should have sought writ relief, and, of course, part of the reason for that is this wasn't an evidentiary ruling. It was concerned a jury instruction. Can you cite me to one case in California where a motion in limine has been the subject of writ relief that has been successful for the petitioner? No, but that doesn't mean it hasn't happened. I mean, it wouldn't necessarily become a published opinion. And most of our litigation in California is not published. I've never heard of any ruling in motion in limine that's ever been taken up by writ relief being granted. Nor have I ever heard of a judgment being reversed by an erroneous ruling on motion in limine. I think those kinds of things don't make it into the published cases, Your Honor. The fact that there may not be a published case that says that doesn't mean that it hasn't happened. And I think it would tend to not get into the published opinions. And I can't cite you a ---- I mean, we have plenty of cases on discovery disputes, which are interim relief, and go up on writs. And they're published all the time as to the scope of discovery and privilege issues, et cetera. But on a motion in limine, I've only been here since January 21, 1959. But I've never heard of a case where a trial court ruling has been reversed or written granted. I ---- Maybe that has something to do with why he didn't take it up. Nevertheless, Your Honor, I think he should have. Thank you. All right. This matter is marked and submitted. Thank you, counsel. And we will adjourn until tomorrow at 9 o'clock.
judges: Siler , Tashima, Bea